**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CRIMINAL NO. 95-00176-CB |
| | | CIVIL ACTION NO. 04-0352 |
| GEORGES MICHEL, | ) | |
| Defendant/Petitioner. | ) | |

**OPINION and ORDER**

This matter is before the Court on remand from the United States Court of Appeals for the Eleventh Circuit. The appellate court reversed the order dismissing as time-barred Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. In this order, the Court addresses the merits of the claims raised by Petitioner Georges Michel, in both his original § 2255 motion and in his motion to amend.[1] For the reasons discussed below, the Court finds that there is no set of facts that would entitle Petitioner to relief on any of the claims asserted. Therefore, the motion is due to be denied without a hearing.

**Factual & Procedural Background**

**Pretrial Proceedings**

The original indictment in this case was returned on September 21, 1995 and sealed. Georges Michel and two others–Tyrone Walker and Salen Mitre–were charged in that indictment[2] but no arrests were made due to the government's ongoing investigation. In October

---

[1]The filings related to the § 2255 motion are: (1) Petitioner's motion (doc. 687), Petitioner's motion to amend (doc. 694), Petitioner's memorandum in support (doc.768), the governments response (doc. 776) and Petitioner's reply to the government's response (doc. 779).

[2]The charges were conspiracy to import more than 225 kilograms of cocaine (Count One) and conspiracy to possess with intent to distribute more than 225 kilograms of cocaine (Count

1997, a superseding indictment was returned adding numerous additional charges and defendants.  Ultimately, Michel was charged in One through Six and Ten in the Second Superseding Indictment ("the indictment"). Codefendant James Armstrong was charged in Counts One and Two only.[3]

The Court appointed CJA-panel attorney Paul Brown to represent Michel shortly after his arrest.  Mr. Brown filed a timely motion to dismiss the indictment, asserting that the two-year delay between the original indictment and his arrest violated Michel's constitutional right to a speedy trial.  (Doc. 76.)  In a written order, the Court denied the motion after applying the a speedy trial analysis set forth by the Supreme Court in *Baker v. Wingo*, 407 U.S. 514 (1972).[4]

Prior to the February 1998 trial term when Michel, Armstrong and several others were set for trial, four codefendants (who were named only in Count Ten of the indictment) filed a motion to sever.  Because the only connection between the offenses charged in Counts One and Two and the offense charged in Count Ten were a few common defendants, only one of whom–Michel-- was set for the February term, the Court concluded that joinder was improper and granted the motion to sever.  The trial of eight defendants named in Counts Ten, Eleven and Thirteen was set

---

Two).

[3] The dates and members of the two conspiracy charges were identical; only the objects of the two conspiracies were different. In the same indictment, Michel, Walker, Sanders and several others were charged with various conspiracy and attempt counts.  Count Ten was also a drug conspiracy count, but it arose out of a different conspiracy and included a number of defendants who were not named in any other counts.

[4] The Court held: "[T]he defendants Sixth Amendment right to a speedy trial has not been violated.  Although the defendant has timely asserted a speedy trial violation, the delay has not been unduly lengthy, the government was engaged in good faith investigation during the time of the delay and the defendant has failed to show, other than in vague terms, how he was prejudiced by the delay."  (Doc. 139 at 3.)

for February 9, 1998, with jury selection to take place on February 4, 1998. The government suggested that the second trial be continued until April so that Armstrong and Michel could be tried along with codefendant Marcus Sanders. Michel and Armstrong strenuously objected to a continuance, however, so the Court set both trials for February. Jury selection for the two took place on February 2, 1998. The jury was not sworn, and jurors were told to report back for trial on February 17, 1998 for a four-day trial.

For several reasons, the Michel/Armstrong trial could not commence until a verdict had been returned in the first trial,[5] and the first trial lasted substantially longer than expected. By the time the first trial had concluded there was insufficient time to conduct the trial before the commencement of the March trial term.[6] On February 19, 1998, after a conference with counsel for Armstrong and Michel and while the first jury was deliberating, the Court entered an order continuing the Michel/Armstrong trial until the March term. The order dismissed the jury that had been selected and scheduled a new jury selection for March 2, 1998.[7] A second jury was selected on March 2nd as scheduled and returned on March 17, 1998 for the commencement of trial.

---

[5] The two trials involved many of the same witnesses and much of the same physical evidence. Even after testimony was concluded, the physical evidence was in the possession of the first jury during deliberations.

[6] The week of February 24th included a 2-day local Mardi Gras holiday, during which the courthouse would be closed. That would have left only three days for a projected four-day trial. In addition, the jury had not been qualified for the week of February 24th, and the Court surmised that rescheduling the trial to a holiday week would present difficulties for some jurors.

[7] The Court concluded that it was not possible to retain the jury selected for the February term because the jury had been qualified for only one week, which was almost over. Second, it was uncertain when the first jury would return a verdict and therefore impossible to tell jurors exactly when the second trial would start. Finally, the last week of the trial term included a 2-day holiday which made it likely that the trial would be pushed into March in any event.

**Trial & Sentencing**

The evidence against Petitioner Georges Michel was substantial.  The first conspiracy began in 1994 or 1995 when Michel asked codefendant Tyrone Walker to finance the importation of cocaine from Haiti.  Michel said that he knew the captain of a Haitian freighter that was coming into Miami, Florida with 225 kilograms of cocaine.  Walker subsequently enlisted help from others, including "Jaime" who was actually James Tanner, an undercover United States Customs agent.  Months passed, and the Haitian freighter did not materialize. Michel, Walker, Jaime and others began working on other plans to purchase and distribute cocaine.  Eventually, in October 1997, these plans led to meeting in Mobile, Alabama where the purchase of a substantial amount of cocaine was to take place.  The plan turned out to be a "reverse sting" orchestrated by Customs agents.  Michel and numerous others were arrested in Mobile.

After the close of the government's case, Michel's counsel moved for a judgment of acquittal alleging that the government failed to prove venue with respect to Counts One and Two.  The Court allowed the government to reopen its case.  Agent Tanner testified that he was in Mobile when he spoke with Michel over the telephone about the conspiracies charged in Counts One and Two.  The Court denied the motion for judgment of acquittal.  The jury found Michel guilty on Counts One, Two, Four, Five, Six and Ten. Michel's attorney renewed the venue argument in a motion for arrest of judgment. (Doc. 329.)  The Court denied that motion as well.

Petitioner was sentenced to 400-month concurrent sentences on each of the six counts.

**Post-Sentencing Proceedings**

Petitioner appealed and was represented on appeal by Mr. Brown. Among the issues raised on appeal--and summarily rejected by the appellate court--was lack of venue. (Doc. 556 at 2.) Petitioner's appeal was successful, however, on two issues. First, his conviction on Count Ten was reversed due to the Court's failure to give a requested instruction. Second, his sentence on all counts was reversed, and his case was remanded for resentencing in light of *Apprendi*. After remand, Petitioner sought and was granted permission to proceed *pro se*. The Court resentenced Petitioner to a total term of 360 months consisting of 240 months as to Count One plus a consecutive 120 months on Counts Two, Four, Five and Six.[8] Count Ten was dismissed on the government's motion. Petitioner appealed his resentencing, arguing, *inter alia*, that the Court lacked authority to make a drug-quantity determination. The appellate court rejected this argument (Doc. 675 at 6), and Petitioner's resentencing was affirmed on appeal.[9] In May 2004, petitioner filed a motion requesting that the Eleventh Circuit recall the mandate, apparently so that he could file a petition for writ of certiorari in the United States Supreme Court. After petitioner's motion to recall the mandate was denied, he sought a writ of mandamus from the Supreme Court. The petition for writ of mandamus was denied on June 6, 2005. *In re James Armstrong and Georges Michel*, 125 S. Ct. 2558 (2005) (mem.).

**Issues Presented**

As clarified in his reply brief, Petitioner raises a total of five claims in his § 2255 motion and in his motion to amend:

---

[8]The 120-month sentences are concurrent with each other but consecutive to the 240-month

[9]Petitioner's first and second appeals will be referred, respectively, to as "*Michel I*" and "*Michel II*".

      1.  This Court failed to follow the mandate of the Eleventh Circuit when it resentenced Petitioner after remand.

      2.  Counsel rendered constitutionally ineffective assistance prior to trial because he failed to argue that Petitioner had a constitutional right to be present when the Court decided to discharge the jury that was selected for the February trial term

      3.  Counsel rendered constitutionally ineffective assistance by failing to argue that the government had engaged in impermissible forum shopping by bringing the indictment in the Southern District of Alabama.

      4.  Counsel rendered constitutionally ineffective assistance by failing to argue that Petitioner's Sixth Amendment right to an impartial jury had been violated.

      5.  Counsel rendered constitutionally ineffective assistance by failing to argue that the delay in bringing him to trial was the result of the government's bad faith, i.e., impermissible forum shopping.

**Section 2255 Analysis**

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited.  *Addonizio v. United States*, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.  The appellate process does not permit reruns."  *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1994).

    In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal.

The burden a petitioner must meet differs, depending upon the type of claim he raises.  First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted).  A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent.  Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors."  *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990).[10]  One way a petitioner may overcome a procedural default is by demonstrating that the default was due to constitutionally ineffective performance by counsel.  *Cross*, 893 F.2d at 1290.  To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial."  *Id.*  However, "[c]onclusory allegations of ineffective assistance are insufficient."  *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)).  Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance of counsel."  *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland* 466 U.S. at 686.

---

[10]Jurisdictional issues, however, are not subject to procedural default because federal courts are of limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking.  *Harris v. United States*, 149 F.3d 1304, 1307 (11th Cir. 1998).

7

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted).

**Discussion**

### Claim One: Failure to Enforce the Mandate

Petitioner claims that his due process rights were violated because the trial court failed to enforce the mandate when this matter was remanded for resentencing. The violation, according to Petitioner, arises from this Court's drug quantity determination at sentencing.[11] Though Petitioner insists otherwise, the record conclusively demonstrates that this issue was raised and decided in the *Michel II* appeal. (Doc. 675 at 8.) Petitioner also contends that his due process rights were violated because the *Michel II* panel failed to enforce the mandate of *Michel I* panel. This is not a constitutional due process claim; it is merely a disagreement with the decision of the second panel.

### Claim Two: Ineffective Assistance/Discharge of First Jury

Petitioner asserts that discharging the first jury violated petitioner's right to be present at all critical stages of his trial and that counsel was ineffective for failing to raise this issue at trial or on appeal. This claim fails because the continuance order discharging the jury was not a

---

[11] Petitioner maintained that this Court was not authorized to make a drug quantity determination at resentencing. (Doc. 675 at 7.)

8

critical stage. *See United States v. Vasquez*, 732 F.2d 846 (11th Cir. 1984) ("right to be present at trial does not confer upon defendant the right to be present at every conference at which a matter pertinent to the case is discussed").

### Claim Three: Ineffective Assistance/Forum Shopping

Petitioner's forum-shopping claim is grounded on the theory that venue was improper in this district. Petitioner's attorney raised the venue argument at trial, after trial and on appeal. Nevertheless, Petitioner contends that counsel should have argued that by bringing the indictment against him in this district the government acted in bad faith. Petitioner's bad faith argument presumes that venue was not proper in this district. Both this Court and the appellate court held that venue *was* proper in this district. Since the improper venue argument did not succeed, counsel cannot be faulted for failing to include the additional argument that the improper venue was the result of bad faith forum shopping. Failure to raise a nonmeritorious issue does not amount to constitutional ineffective assistance.

### Claim 4: Ineffective Assistance/Right to an Impartial Jury

Petitioner claims that counsel was constitutionally ineffective because he "failed to raise during trial or on direct appeal that the district court denied [Petitioner] his right to an impartial jury." (Doc. 768 at 33.) This is a conclusory argument. Petitioner points to no facts or evidence that he was denied his right an impartial jury. The only support Petitioner can offer is that 15 days elapsed between jury selection and trial. Petitioner believes that supplemental voir dire should have been conducted when the jury returned for trial. He cites no evidence in the record (nor has the Court found any) that might indicate a need for supplemental voir dire. Even if supplemental voir dire might have been appropriate, the lack thereof is not evidence of an impartial jury. Counsel cannot be faulted for failing to raise an objection that had no evidentiary

9

or legal support.

### Claim 5: Ineffective Assistance/Speedy Trial/Bad Faith

This claim faults counsel's motion to dismiss on speedy trial grounds. Petitioner insists that counsel was constitutionally ineffective because he failed to argue that the government had a bad faith motive for delaying Petitioner's arrest.[12] That motive, according to Petitioner, was forum shopping--by which he means that the government lured criminal activity to this district for the purpose of creating venue. Counsel's failure to raise this argument was neither unreasonable nor prejudicial because counsel could not have made a credible argument that forum shopping was the reason for the delay. The delay in this case was a two-year period between the original indictment and Petitioner's arrest. This forum had already been chosen *before* the delay. Furthermore, the evidence contradicts Petitioner's claim that investigation was delayed in order to lure him to Alabama. According to the testimony presented at trial, the investigation was lengthy because investigators were literally waiting for a boat to come in, i.e., the boat Michel promised was loaded with cocaine and headed for the U.S., but it never arrived.

**Conclusion**

For the reasons stated, petitioner's motion to vacate, set aside or correct sentence, as amended, is hereby **DENIED**.

**DONE** and **ORDERED** this the 8th day of February, 2010.

                                            *s/Charles R. Butler, Jr.*
                                            **Senior United States District Judge**

---

[12] Among the factors considered in the *Barker* speedy trial analysis is the cause of the delay and whether the government acted in good faith. (Doc. 139 at 2.)